# Exhibit A:

Excerpts from the Deposition Transcript of Francisco Colon

Date: November 16, 2015

Pages: 20, 28, 43-44, 56-57

# In The Matter Of:
*Mancini vs*
*City of Providence*

*Major Francisco Colon*
*November 16, 2015*



**ALLIED COURT REPORTERS, INC.**
*and*
VIDEO CONFERENCE CENTERS

Phone: 401-946-5500     Toll Free: 888-443-3767
www.alliedcourtreporters.com     info@alliedcourtreporters.com

*Min-U-Script® with Word Index*

1        I think is what you said.
2   Q.   Right.
3        A.   No.  I did have an opinion.
4   Q.   What was your opinion of him?
5        A.   My opinion was that he was a negative police
6        officer.
7   Q.   Okay.  So prior to that meeting in June of 2012,
8        you thought Sergeant Mancini was a negative
9        police officer?
10       A.   Yes.
11  Q.   Can you point to any evidence to support that?
12       A.   It was based -- okay.  So just prior to the
13       exam, I had had conversations with Sergeant
14       Grenada who indicated to me that the Sergeant was
15       less than responsive in terms of providing
16       Sergeant Grenada with certain documentation that
17       the Sergeant was looking for.  So I had had a
18       conversation or maybe several conversations with
19       Sergeant Grenada, and that's what I recall.  And
20       this was just prior to the exam.  Again, Sergeant
21       Granada indicated to me that the Sergeant was
22       less than responsive in providing documents that
23       he needed.
24  Q.   What documents?
25       A.   Medical documents, I believe, is what they

```
 1           what do you mean he was negative?
 2        A.  I think he complained about the job often.
 3     Q.  Okay.  You think he complained about the job
 4           often.  Did you hear he complained about the job
 5           often?  From whom?
 6        A.  I don't know specifically.
 7     Q.  Did you hear any other supervisor make any
 8           negative comments about any other police officers
 9           other than Mark Mancini?
10        A.  Yes.
11     Q.  Give me an example.  Who?
12        A.  I don't recall specific names.
13     Q.  What about Pao Yang, did you ever hear anybody
14           make any negative comments about him?
15        A.  Yes.
16     Q.  Who did you hear make negative comments about Pao
17           Yang?
18        A.  I don't recall who.  Had I taken notes as to
19           who said what or minutes of meetings I would be
20           able to tell you, but, unfortunately, we didn't
21           do that.  But, yeah, have I heard officers speak
22           negatively about Pao Yang?  Sure.
23     Q.  Do you recall who Sergeant Mancini's direct
24           supervisor was in June of 2012?
25        A.  I do not.
```

```
 1        A.   Not that I'm aware of.
 2   Q.   Did you ever hear of any problems that Sergeant
 3        Mancini had when he was over in Homeland
 4        Security?
 5        A.   Not that I'm aware of.
 6   Q.   Do you remember what you recommended for service
 7        points for Sergeant Mancini?
 8        A.   Yes.
 9   Q.   What?
10        A.   A zero.
11   Q.   Why did you recommend he get a zero?
12        A.   I think I've already answered that in the
13        beginning of this.
14   Q.   You did?
15        A.   Yeah.
16   Q.   Okay.  Can you answer it again?  I must have
17        missed it.
18        A.   Sure.  I said that I formulated my opinion to
19        recommend a zero based on conversations and
20        information that was provided to me by officers
21        who supervised him, including officers who were
22        making recommendations about what points they
23        were going to recommend for Sergeant Mancini, in
24        addition to the information I had from Sergeant
25        Grenada about his less than responsiveness to
```

```
 1           providing documents.
 2       Q.  Is one of the reasons that you recommended
 3           Mancini get a zero for service points because he
 4           wasn't providing documentation to Sergeant
 5           Grenada regarding his injury?
 6       A.  I just told you, it was one of the things
 7           that I considered.
 8       Q.  So it factored into your decision to recommend a
 9           zero?
10       A.  That he's not being cooperative and he's a
11           supervisor, he's a Sergeant, and I'm hearing
12           complaints from Sergeant Grenada that he's less
13           than responsive, absolutely.  That's not the
14           behavior you expect from a supervising officer.
15       Q.  Did you ever talk to Sergeant Mancini as to
16           whether or not Sergeant Grenada's allegations
17           were accurate?
18       A.  No.
19       Q.  Why not?
20       A.  I didn't -- I relied on Sergeant Grenada and
21           relied on the fact that I believe he was being
22           forthright and forthcoming in telling the truth.
23           If you know Sergeant Grenada, there's no one --
24           he's an honest man, God-fearing man.  Sergeant
25           Grenada is not going to make something like that
```

```
 1          Verdi's, for example, he obviously -- it looks
 2          like he used the same sheet and crossed off,
 3          right, and changed --
 4     Q.   So -- I'm sorry.  Are you done testifying?
 5     A.   Yes.
 6     Q.   So it sounds like you utilized two score sheets;
 7          right?  One that was blank that you wrote on that
 8          you say you discarded and the one that's in
 9          Exhibit 2?
10     A.   Sure.
11     Q.   Yes?
12     A.   Yes.
13     Q.   So who typed in the fives on page five?
14     A.   That would have been Sergeant Grenada.
15     Q.   So who told him to type in the fives?
16     A.   I probably gave him the list of the
17          recommendations that were decided upon and likely
18          told him, We're waiting for a decision on the
19          other ones, so it would have been me.
20     Q.   You testified that you couldn't remember any
21          negative comments that were made about Sergeant
22          Mancini at this meeting.  Were there any negative
23          comments about any other promotional candidates
24          made at that meeting?
25     A.   My testimony is that I can't remember with
```

1   any degree of specificity as to what negative
2   comments were made by whom.  Were there -- and
3   you keep calling them negative comments.  Maybe
4   they are negative comments, but, yes, there was
5   some conversation that was negative, not only
6   about Sergeant Mancini but about other candidates
7   at that meeting, yes.
8   Q.  And I just want to make sure I understand your
9       testimony.  The reasons that you recommended
10      Mancini get a zero was because, A, you heard
11      negative things about him before this meeting
12      from supervising officers?
13  A.  And during.  And during the meeting.
14  Q.  And during the meeting --
15  A.  We went around the table, and officers with
16      what I believe to be direct knowledge provided
17      some information about Officer Mancini and other
18      officers, and clearly the officers that got the
19      lowest points, so I considered the opinions of
20      those supervising officers who had direct
21      knowledge, plus the information I shared with you
22      that was given to me by Sergeant Grenada.
23  Q.  And the other reason is because Sergeant Grenada
24      told you that Mancini was not providing
25      documentation on his injury pursuant to Grenada's

89

# C E R T I F I C A T E

I, DENISE A. WEBB, a Notary Public in and for the State of Rhode Island, duly commissioned and qualified to administer oaths, do hereby certify that the foregoing Deposition of MAJOR FRANCISCO COLON, a WITNESS in the above-entitled cause, was taken before me on behalf of the PLAINTIFF at The Law Offices of Mark P. Gagliardi, 120 Wayland Avenue, Suite 7, Providence, Rhode Island on November 16, 2015 at 4:00 p.m.; that previous to examination of said WITNESS who was of lawful age, he was first sworn by me and duly cautioned to testify to the truth, the whole truth, and nothing but the truth, and that he thereupon testified in the foregoing manner as set out in the aforesaid transcript.

I further certify that the foregoing Deposition was taken down by me in machine shorthand and transcribed by computer, and that the foregoing Deposition is a true and accurate record of the testimony of said WITNESS.

Pursuant to Rules 5(d) and 30(f) of the Federal Rules of Civil Procedure, original transcripts shall not be filed in Court; therefore, the original is delivered to and retained by Plaintiff's Attorney, Mark P. Gagliardi.

I have enclosed with the Deposition a correction and signature page, which must be signed before a Notary Public.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 2nd day of December, 2015.

*Denise A. Webb, RPR*
*Notary Public*

DENISE A. WEBB, CSR/RPR/NOTARY PUBLIC
MY COMMISSION EXPIRES APRIL 7, 2018