UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

MARK MANCINI,
    PLAINTIFF

          v.

CITY OF PROVIDENCE, by and Through Its
Treasurer, James J. Lombardi, III, and
HUGH CLEMENTS, JR.,
    DEFENDANTS.

C.A. No. 13-092-S-PAS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and LR cv 56 of the Local Rules

of the United States District Court for the District of Rhode Island, Plaintiff Mark Mancini hereby

submits this Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment

(Doc. No. 85).  For the reason stated herein, the Court should deny Defendants' motion.

I.    MANCINI IS ABLE TO ESTABLISH THAT HE WAS DISABLED WITHIN THE MEANING OF
THE LAW AT THE TIME OF THE JUNE 2012 LIEUTENANTS' PROMOTIONAL
EXAMINATION.

In 2008, Congress made significant changes to the ADA, by enacting the ADA

Amendments Act of 2008 (ADAAA), which became effective on January 1, 2009.  This law made a

number of significant changes to the definition of "disability" under the ADA.  The primary

purpose of the ADAAA is:

> [T]o make it easier for people with disabilities to obtain protection under the
> ADA.  Consistent with the Amendments Act's purpose of reinstating a broad scope
> of protection under the ADA, the definition of "disability" in this part shall be
> construed broadly in favor of expansive coverage to the maximum extent permitted
> by the terms of the ADA. The primary object of attention in cases brought under the
> ADA should be whether covered entities have complied with their obligations and
> whether discrimination has occurred, not whether the individual meets the definition

of disability. The question of whether an individual meets the definition of disability
under this part should not demand extensive analysis.
29 C.F.R. § 1630.1(c)(4).

In its Cross-Motion for Summary Judgment, Defendants argue that Mancini cannot establish

that he suffered from a "physical impairment." This argument defies all logic and common sense

and importantly, it ignores the purpose behind the 2008 amendments to the ADA. Indeed, it is

difficult to imagine how Mancini's injured knee, which required surgery and sidelined him from

working for approximately seven (7) months — from November 2010 to May 2011 — does not rise

to the level of a physical impairment within the meaning of the law.

Here, Mancini was diagnosed with *chondromalacia*, which is defined as a "degeneration of

cartilage in the knee, usually caused by excessive wear between the patella and lower end of the

femur." http://www.dictionary.com/browse/chondromalacia (last visited September 23, 2016). As

such, this diagnosis clearly meets the definition of a physical impairment because it is a physiological

disorder or condition affecting a body system such as the "musculoskeletal" system. See 29 C.F.R. §

1630.2(h). Unless, Defendants can prove that knee cartilage is not part of the musculoskeletal

system, then their argument fails. More importantly, if Mancini did not have a physical impairment,

then why did he need to have knee surgery? This argument makes absolutely no sense. Indeed,

people do not get surgery unless they have a physical condition requiring it.

## II.   MANCINI NEED NOT PRESENT MEDICAL EVIDENCE TO ESTABLISH HE SUFFERED FROM A DISABILITY WITHIN THE MEANING OF THE LAW — HIS OWN TESTIMONY IS SUFFICIENT.

Defendants' next argument is that Mancini needs medical evidence to prove he was disabled

within the meaning of the law and, therefore, he cannot rely on his own testimony about his medical

condition. However, this is not the law in the First Circuit according to Katz v. City Metal Co., Inc.

to which Mancini cited in his Memorandum of Law in Support of Plaintiff's Motion for Summary

Judgment at pages 13-14. 87 F.3d 26, 32 (1st Cir. 1996) ("There is certainly no general rule that medical testimony is always necessary to establish disability. Some long-term impairments would be obvious to a lay jury (*e.g.,* a missing arm) and it is certainly within the realm of possibility that a plaintiff himself in a disabilities case might offer a description of treatments and symptoms over a substantial period that would put the jury in a position where it could determine that he did suffer from a disability within the meaning of the ADA.").[1]

Here, Mancini's testimony about his medical condition is not self-serving as alleged by Defendants.  On the contrary, Mancini sees no benefit to inconveniencing his treating physician by presenting him at trial simply to tell the jury information that requires no specialized skill or experience required by an expert opinion — that Mancini's injured right knee, which required surgery, which sidelined from working for seven months, and which was so severe that Defendants forced him to apply for accidental disability benefits — constituted a physical impairment that substantially limited a major life activity and that his physical impairment was substantially limited as compared to the average member of society.  Retaining an expert witness for this purpose would not only be a waste of time and money, but also a tremendous inconvenience to the doctor whose time would be better served providing medical treatment to patients.

## A.  MANCINI'S OWN TESTIMONY IS SUFFICIENT TO PROVE THAT HIS PHYSICAL IMPAIRMENT SUBSTANTIALLY LIMITED A MAJOR LIFE'S ACTIVITY.

Here, because the alleged discrimination occurred after the effective date of the ADA Amendments Act of 2008 ("ADAAA"), the broadened standard for qualifying as disabled applies. 29 C.F.R. § 1630.2(j) ("The term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. 'Substantially limits' is not meant to be a demanding standard.").

---

[1] In his Memo in Support, Mancini mistakenly cites to <u>287</u> F.3d 26 instead of <u>87</u> F.3d 26.  Nonetheless, Defendants should have been able to find this case because every other reference to this case was correct.

In <u>Palacios v. Cont'l Airlines, Inc.</u>, No. CIV.A. H-11-3085, 2013 WL 499866, at *1 (S.D.

Tex. Feb. 11, 2013), the court held that Plaintiff's own testimony about his disability (depression)

satisfied his burden at the summary judgment stage for proving that he was disabled within the

meaning of the law.  The court wrote:

> Plaintiff testified that his depression affected his ability to sleep and eat over a period
> of several years, that sometimes he slept too much, one time for almost two days,
> and at other times he could not sleep, that sometimes he didn't eat, and that
> sometimes he just sat in his living room and did not do anything, "just ... blank."
> Plaintiff testified that prior to taking his FMLA leave, he chose to allow others to
> work many of his hours, which company policy allowed, and that due to his
> depression he did not really care about potentially losing his house or making car
> payments or paying other accounts.  Plaintiff testified that it took a lot of effort to
> get out of bed and take care of himself.  Plaintiff did not testify that his disability
> adversely affected his job performance as a sales agent, and Defendant makes no
> claim that it did. Nonetheless, the self-described severity of Plaintiff's depression and
> its adverse effects on his desire to work, his sleeping, his eating, and his attention to
> ordinary care of himself, supported by some medical evidence Plaintiff presents,
> would appear sufficient under the more lenient standard of the ADAAA at least to
> raise a fact issue that Plaintiff had a disability under the ADA. <u>See</u> 29 C.F.R. §
> 1630.2(j) ("The primary object of attention in cases brought under the ADA should
> be whether covered entities have complied with their obligations and whether
> discrimination has occurred, not whether an individual's impairment substantially
> limits a major life activity. Accordingly, the threshold issue of whether an impairment
> 'substantially limits' a major life activity should not demand extensive analysis.");
> <u>Naber v. Dover Healthcare Assocs., Inc.</u>, 765 F.Supp.2d 622, 643–47 (D.Del. 2011)
> (finding plaintiff's depression, which limited her ability to sleep, eat, and concentrate
> constituted a disability under the amended ADA); <u>Estate of Murray v. UHS of
> Fairmount, Inc.</u>, Civ. A. No. 10–2561, 2011 WL 5449364, at *6–8 (E.D.Pa. Nov. 10,
> 2011) (applying the amended ADA and declining to grant summary judgment based
> on a lack of disability when some facts are alleged regarding plaintiff's depression and
> anxiety and summary judgment is appropriate on other grounds); <u>Karr v. Napolitano</u>,
> No. C 11–02207 LB, 2012 WL 4462919, at *9 (N.D.Cal. Sept. 25, 2012) (finding
> plaintiff's sleep apnea was sufficient to constitute a disability under more lenient
> standard enacted by the ADAAA even though it did not affect his ability to do his
> job).

<u>Id</u>. at *4.

III. **IT IS UNDISPUTED THAT DEFENDANTS WERE AWARE OF PLAINTIFF'S RECORD OF A PHYSICAL IMPAIRMENT AT THE TIME OF THE JUNE 2012 LIEUTENANTS' PROMOTIONAL EXAMINATION.**

To the extent that Mancini did not suffer from an "actual" disability within the meaning of the law at the time of the promotional examination, it is indisputable that Defendants were aware of Mancini's record a physical impairment when he sat for the exam. At the time of the June 2012 Lieutenants' Exam, Mancini was on IOD Status as a result of his injured knee (Ex. 6). Furthermore, Defendants directed Mancini to apply for retirement on accidental disability benefits on September 2, 2011 (Ex. 4). It is also undisputed that Plaintiff's superiors completed a disability retirement application for his forced retirement because he was unwilling to seek retirement (Pasquale Granata Depos. Tr. at 91:19-25).

Here, Defendants cannot have it both ways. They cannot argue that Mancini should have retired on accidental disability and then in the same breath argue that he cannot prove Defendants had knowledge of his of his record of a physical impairment.

IV. **AT THE TIME OF THE 2012 LIEUTENANTS' PROMOTIONAL EXAMINATION, MANCINI WAS A QUALIFIED DISABLED PERSON WITHIN THE MEANING OF THE LAW BECAUSE HE COULD PERFORM THE ESSENTIAL FUNCTIONS OF THE LIEUTENANT POSITION WITH OR WITHOUT A REASONABLE ACCOMMODATION.**

"The term 'qualified,' with respect to an individual with a disability, means that the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m).

Mancini received the second highest score on the written portion of the examination. Mancini also received five points for education and five points for seniority. Furthermore, Mancini received an "Exceptional" rating on his most recent performance evaluation prior to taking the exam. As such, Mancini had the requisite skill, experience, education and other job-related

requirements for the Lieutenant's position.  Indeed, the only accommodations Mancini needed were

a leave-of-absence and to return to work on Light Duty Status until his knee injury fully-improved.

In fact, had Defendants not discriminated against Mancini by awarding him a zero for service points,

Mancini would be performing the duties of a Lieutenant right now.

## CONCLUSION

For the reasons previously stated, Plaintiff Mark Mancini respectfully requests this

Honorable Court deny Defendants' Motion for Summary Judgment.

> MARK MANCINI
> By His Attorney,
>
> /s/Mark P. Gagliardi
> Mark P. Gagliardi (#6819)
> LAW OFFICE OF MARK P. GAGLIARDI
> 120 Wayland Avenue, Suite 7
> Providence, RI 02906
> (401) 277-2030
> (401) 277-2021 (fax)
> mark@markgagliardilaw.net

Dated:  June 16, 2017

## CERTIFICATION

I hereby certify that on this **16**th day of June, 20**17**, I filed electronically this document with

the Clerk of the U.S. District Court for the District of Rhode Island and, therefore, all counsel-of-

record has received notice electronically.

> /s/Mark P. Gagliardi