UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MARK MANCINI,<br>    PLAINTIFF<br><br>v.<br><br>CITY OF PROVIDENCE, by and Through Its<br>Treasurer, James J. Lombardi, III, and<br>HUGH CLEMENTS, JR.,<br>    DEFENDANTS. | :<br>:<br>:<br>:<br>:<br>:    C.A. No. 13-092-S-PAS<br>:<br>:<br>:<br>:<br>:<br>: |

**REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT CITY OF PROVIDENCE ON THE ISSUE OF LIABILITY ON COUNTS I, II, III, AND IV OF THE COMPLAINT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and LR cv 56 of the Local Rules of the United States District Court for the District of Rhode Island, Plaintiff Mark Mancini hereby submits this Reply to Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment Against the City of Providence on the Issue of Liability on Counts I, II, III, and IV of the Complaint (Doc. No. 85). For the reasons stated herein, the Court should grant Plaintiff's Motion for Partial Summary Judgment.

I. **DEFENDANT HAS NOT FULFILLED ITS OBLIGATIONS UNDER RULE 56 OF THE FEDERAL RULES OF CIVIL PROCEDURE AND, THEREFORE, SUMMARY JUDGMENT MUST ENTER FOR MANCINI.**

Under Rule 56 of the Federal Rules of Civil Procedure, once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original)). As the Supreme Court stated in Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)

"[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted). Indeed, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Id. at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. R.G. Group, Inc. v. Horn Hardart Co., 751 F.2d 69, 77 (2d Cir. 1984) (quoting SEC v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" BellSouth Telecomms., Inc. v. W.R. Grace & Co., 77 F.3d 603, 615 (2d Cir. 1996).

Here, because Defendants cannot point to any specific evidence-on-the-record that Mancini had a bad attitude and was not a team player — the reasons they claim why he received a zero for service points — other than Defendant Clements' own self-serving testimony, these reasons amounts to mere conclusions without any supporting facts, which is insufficient for a party opposing summary judgment.

II. **BURDINE V. TEXAS DEPT. OF CMTY. AFFAIRS, 450 U.S. 248 (1981) IS THE CONTROLLING LEGAL STANDARD FOR DETERMINING WHETHER DEFENDANT HAS MET ITS BURDEN OF PRODUCTION AT THE SUMMARY JUDGMENT STAGE: DEFENDANTS MUST PRODUCE EVIDENCE OF A LEGITIMATE, NON-DISCRIMINATORY REASON FOR GIVING MANCINI A ZERO THAT IS "CLEAR AND REASONABLY SPECIFIC."**

In Defendant's Opposition Memorandum, it "cherry picks" the language from various cases to argue that to meet its burden of production in defending Mancini's Motion for Summary Judgment it merely has to produce "competent evidence taken as true, to enable a rational factfinder to conclude there existed a nondiscriminatory reason for the challenged employment action." (Def.'s Opp. Memo at 5) (citing Felciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 6 (1st Cir. 2000)). However, this is not the whole story and not the fully-applicable legal standard

and Defendant knows it. Defendant has been caught with its hand in the cookie jar. It knows it does not have a legitimate, non-discriminatory reason for giving Mancini a zero for service points. Accordingly, Defendant has played the only card it has left by providing vague reasons for its employment action so Mancini will not be able to prove pretext. Indeed, an employer accused of discrimination, has three possible choices for a defense: (1) say nothing, and lose at trial;[1] (2) lie about the true reasons, allowing the plaintiff an opportunity to prove pretext, and risk losing at trial; or (3) do what Defendants have done here — give vague, non-specific reasons for its decision, thereby eliminating any opportunity for plaintiff to prove pretext. While Defendant's tactic is fairly clever, it will not work. And the reason is will not work is because the United States Supreme Court issued a decision in Burdine v. Texas Dept. of Cmty. Affairs, 450 U.S. 248 (1981) to address the "con-job" Defendant is trying to pull here on Mancini and this Court. Unfortunately for Defendant, the Burdine ruling should put an end to this charade.

In Burdine, the Court discussed in great detail the burdens borne by both the plaintiff and the defendant in an employment discrimination case at the summary judgment stage, focusing on the burden defendant faces in producing evidence of its legitimate, non-discriminatory reason(s) for its employment decision. The Burdine court wrote:

> In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973), we set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment. First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Id., at 802, 93 S. Ct., at 1824. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. Id., at 804, 93 S. Ct., at 1825.

---

[1] St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510 n.3 (1993) (stating that if an employer fails to show a nondiscriminatory reason at trial the plaintiff will win unless his or her prima facie case does not convince the fact finder to infer a discriminatory motive).

The nature of the burden that shifts to the defendant should be understood in light of the plaintiff's ultimate and intermediate burdens. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. See Bd. of Trs. of Keene State Coll. v. Sweeney, 439 U.S. 24, 25, n. 2, 99 S. Ct. 295, 296, n. 2, 58 L.Ed.2d 216 (1978); id., at 29, 99 S. Ct., at 297 (STEVENS, J., dissenting). See generally 9 J. Wigmore, Evidence § 2489 (3d ed. 1940) (the burden of persuasion "never shifts"). The McDonnell Douglas division of intermediate evidentiary burdens serves to bring the litigants and the court expeditiously and fairly to this ultimate question.

The burden of establishing a prima facie case of disparate treatment is not onerous. The plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination. The prima facie case serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection. See Teamsters v. United States, 431 U.S. 324, 358, and n. 44, 97 S. Ct. 1843, 1866, n. 44, 52 L.Ed.2d 396 (1977). As the Court explained in Furnco Construction Corp. v. Waters, 438 U.S. 567, 577, 98 S. Ct. 2943, 2949, 57 L.Ed.2d 957 (1978), the prima facie case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee. If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case.

The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. See Sweeney, supra, at 25, 99 S. Ct., at 296. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. **To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant**. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. **Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext**. The sufficiency of the defendant's evidence should be evaluated by the extent to which it fulfills these functions.

Id. at 252-56 (emphasis added).

**[T]he defendant's explanation of its legitimate reasons must be clear and reasonably specific**. See Loeb v. Textron, Inc., 600 F.2d 1003, 1011–1012, n. 5

> (1st Cir. 1979). This obligation arises both from the necessity of rebutting the inference of discrimination arising from the prima facie case and from the requirement that the plaintiff be afforded "a full and fair opportunity" to demonstrate pretext.

Id. at 258 (emphasis added).

Here, Defendants have not provided Mancini with a reason that is "clear and reasonably specific" for awarding him a zero for service points. Not being a team player and having a negative attitude with no specific examples or details are not clear and reasonably specific reasons for the purposes of summary judgment. As such, Mancini has not been afforded "a full and fair opportunity" to demonstrate pretext. Indeed, it is impossible for Mancini to disprove Defendant Clements' contention that he has a bad attitude or that he is not a team player if Clements provides no specific details.

### A. COURTS DEALING WITH THIS ISSUE HAVE CONSISTENTLY RULED THAT DEFENDANTS MUST PROVIDE A CLEAR AND REASONABLY SPECIFIC REASON FOR THEIR EMPLOYMENT DECISION IN ORDER TO MEET THEIR BURDEN OF PRODUCTION AT THE SUMMARY JUDGMENT STAGE.

In Loeb v. Textron, Inc., 600 F.2d 1003, 1011 (1st Cir. 1979), the First Circuit explained that while the defendant faces only a burden of production "i.e., a burden to articulate or state a valid reason," that burden still requires specificity. The court noted that "a passing reference by just one of many witnesses to some deficiency in the plaintiff's job rating," for example, would not satisfy the burden. Id. at 1011 n.5. The court explained that with only "general averments of good faith" by the defendant, "a plaintiff cannot be expected to disprove a defendant's reasons unless they have been articulated with some specificity." Id. Furthermore, a defendant relying on a purely subjective reason for discharge will face a heavier burden of production than it otherwise would. Robbins v. White-Wilson Med. Clinic, Inc., 660 F.2d 1064, 1067 (5th Cir. Unit B 1981), vacated on other grounds, 456 U.S. 969, 102 S. Ct. 2229, 72 L.Ed.2d 842 (1982).

Numerous circuit, federal, and state courts agree with this reasoning:

- In Walker v. Mortham, 158 F.3d 1177, 1181 n.8 (11th Cir. 1998), the Eleventh Circuit made clear that the "defendant cannot testify in abstract terms as to what might have motivated the decision-maker; it must present specific evidence regarding the decision-maker's actual motivations with regard to each challenged employment decision."

- In Increase Minority Participation by Affirmative Change Today of Nw. Florida, Inc. (IMPACT) v. Firestone, 893 F.2d 1189 (11th Cir. 1990), the Eleventh Circuit opined that simply representing that the employer selected the candidates with the best qualifications does not satisfy the burden of production. Rather, the employer must actually detail the qualifications it desired and the details of its employment decision. Id. at 1194 ("the mere statement that the State selected the "best qualified" would be insufficient to satisfy the Burdine requirements . . . A mere statement that the employer hired the best qualified person leaves no opportunity for the employee to rebut the given reason as a pretext, which the employee must do if a proper reason is articulated.").

- In Crawford v. Western Elec. Co., Inc., 745 F.2d 1373, 1384 (11th Cir. 1984), the Eleventh Circuit found that the employer's burden of articulating a legitimate, nondiscriminatory reason for its employment decision regarding Plaintiff was not met by proffering testimony that "[Plaintiff's] performance was not satisfactory, that he had trouble following directions, and that he did not have the mechanical ability to progress," because no specific time had been identified when [Plaintiff] had exhibited such deficiencies. The court found the employer had not met its burden of production because "general and non-time specific testimony does not satisfy the Supreme Court's mandate that the employer articulate in a clear and reasonably specific manner the legitimate, nondiscriminatory reasons for its employment decision." Id. (quoting Burdine, 450 U.S. at 255, 258).

- In Patrick v. Ridge, 394 F.3d 311 (5th Cir. 2004), the plaintiff and five other applicants applied for an open position, were interviewed by a three person panel, and rated based on strengths, responses to a uniform set of questions, and how the panel members thought each applicant would fit into the work group. The panel eventually decided not to select any of the six applicants for the position and, instead, hired an outside candidate after deciding she was "best qualified for the position." Id. at 314. To rebut the plaintiff's prima facie case of age discrimination, the defendant claimed that the plaintiff was not "sufficiently suited" for the position. Id. at 316. The court rejected this reason as lacking sufficient clarity, noting that the explanation "does not necessarily qualify as a 'nondiscriminatory' reason" – "the employer just might have found the candidate 'not sufficiently suited' because of a protected trait such as age, race, or engaging in protected activity." Id. at 317. The court further explained that this type of "bald and amorphous" reason prevented both the court and the plaintiff from "identify[ing] the kind of evidence needed to demonstrate that such a rank generalization is or is not pretextual." Id.

- In Iadimarco v. Runyon, 190 F.3d 151, 166 (3rd Cir. 1999), the Third Circuit noted "[t]he mere fact that one who discriminates harbors a sincere belief that he hired the

'right person' cannot masquerade as a race-neutral explanation for a challenged hiring decision." The court pointed out that "[s]uch a belief, without more, is not a race-neutral explanation at all, and allowing it to suffice to rebut a prima facie case of discriminatory animus is tantamount to a judicial repeal of the very protections Congress intended under Title VII." Id.

- In Prudencio v. Runyon, 986 F. Supp. 343, 350 (W.D. Va. 1997), the court determined that the Postal Service's speculative and vague reason for not hiring plaintiffs failed to constitute a legitimate, nondiscriminatory reason, explaining that such a speculative and vague reason amounted to "logical and legal equivalent of proffering no reason for the omission." Thus, the court determined that the defendant had failed to meet its burden of production under the McDonnell Douglas framework and, therefore, the plaintiff was entitled to judgment as a matter of law. Id.

- In Grier v. Secretary of Navy of U.S., 677 F. Supp. 362, 367 (D.Pa. 1987), a Title VII defendant offered as evidence in support of its decision not to promote a black civilian employee mere testimony that "only 'highly qualified' individuals were selected [for promotion] and that [the plaintiff] was not found to be 'highly qualified.'" The court held that this syllogistic explanation ". . . is not the kind of evidence 'that would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus.'" Id. (quoting Burdine, 450 U.S. at 257).

- In Pears v. Mobile County, 645 F. Supp. 2d 1062, 1098 (S.D. Ala. 2009), the Southern District of Alabama observed that the employer's "burden of production is exceedingly light, but is not so ethereal as to be nonexistent, and defendants cannot satisfy it with unvarnished guesswork and cursory conclusions unbacked by evidentiary support."

- In Johnson v. Women's Christian Alliance, 76 F. Supp. 2d 582, 586 (E.D. Pa. 1999), the Eastern District of Pennsylvania found that the employer's claim that it reassigned plaintiff due to "a desire to reorganize and restructure its personnel" does not satisfy its burden of production and noted the lack of "details or explanation concerning the need or rationale for the reorganization, details of its implementation, or its effect on other employees."

- In School Committee of Boston v. Labor Relations Comm'n, 664 N.E.2d 455, 461 (Mass. App. Ct. 1996), the Massachusetts Appeals Court held that the employer failed to satisfy its burden where it failed to, among other things, identify the decision-maker who made the layoff decision, the time frame in which the decision was made, and the rationale for laying off the employees in question.

III. ON THE RARE OCCASIONS WHEN DEFENDANT CLEMENTS ATTEMPTED TO PROVIDE SPECIFICS REASONS FOR WHY HE BELIEVED MANCINI WAS NOT A TEAM PLAYER AND HAD A BAD ATTITUDE, HE, NONETHELESS, CONCEDED THAT THOSE REASONS WERE NOT THE REASONS HE AWARDED MANCINI A ZERO FOR SERVICE POINTS.

Clements testified at his deposition that he <u>did not</u> award Mancini a zero because Mancini: (1) did not attend community events; (2) did not work overtime; (3) complained about the administration; or (4) was investigated by Internal Affairs in 2000 for a transgression:

> Q. Did Mark Mancini get a zero because he didn't participate in community events?
> **A. Specifically, no.**

(Id. at 85:6-24).

> Q. Did Mark Mancini get a zero because he didn't request overtime?
> **A. Specifically, no.**

(Id.).

> Q. Did you give him a zero because he complained about the administration?
> **A. No.**

(Clements Depo. Tr. Vol. II at 78:3-5).

> Q. So did you give him, Mark Mancini, a zero because of that transgression in 2000?
> **A. No.**

(Id. at 77:1-3).

IV. DEFENDANTS HAVE ONLY EXPLAINED THE PROCESS FOR HOW MANCINI RECEIVED THE ZERO — THERE WAS A MEETING AMONG THE COMMAND STAFF TO DISCUSS SERVICE POINTS; THERE WAS A DISCUSSION ABOUT MANCINI; SOME COMMANDERS COMPLETED SCORE SHEETS AND HANDED THEM IN; AND DEFENDANT CLEMENTS EVENTUALLY SETTLED ON A SCORE OF ZERO — BUT DEFENDANTS NEVER EXPLAIN WHY DEFENDANT CLEMENTS SETTLED ON THE LOWEST POSSIBLE SCORE WHEN THE RECOMMENDED SCORES FOR MANCINI RANGED FROM ZERO TO THREE.

Defendants do a great job of explaining how it came about that Mancini received a zero for service points. They go to great lengths to explain the process they followed in awarding service points and their rationale behind it, but they fail to explain WHY Mancini was awarded a zero for service points, which is the most important issue in this case.

Mancini claims he was awarded a zero because he was on IOD status at the time of the promotional exam and because he resisted his superiors' wishes for him to retire on accidental

disability benefits. In its opposition papers, Defendants dance around the issue of why they gave Mancini a zero by explaining why Defendant Clements wanted the service points to have more meaning under his administration than under the previous administration. Defendant Clements also explains why he was stricter in awarding service points to candidates for the Lieutenant's examination as opposed to candidates for the Sergeant's examination. Defendant Clements' logic makes sense, but he never answers the question that must be answered — why a zero? Indeed, the recommendations for service points from the scores sheets for Mancini were as follows:

1. Tucker      3
2. Oates       0
3. Lapatin     2
4. Verdi       1
5. Colon       0
6. Lepre       0
7. Campbell    2

As such, Defendant Clements had four (4) possible choices for Mancini: (a) a zero; (b) a one; (c) a two; or (d) a three. Why did he choose the lowest possible score and the only score that could have prevented Mancini from being promoted?

### A. DEFENDANTS HAVE NOT REBUTTED MANCINI'S ARGUMENT OF WHY OTHER CANDIDATES WITH WORSE PERFORMANCE EVALUATIONS AND GREATER DISCIPLINE THAN MANCINI RECEIVED HIGHER AWARDS FOR SERVICE POINTS.

Importantly, Defendants have failed to rebut Mancini's argument in his moving papers that there were promotional candidates not on IOD status whose work performance were clearly and measurably inferior to his — Gregory Sion, Andrew Scanlon, Steven Courville, and Richard Fernandes — yet these candidates received scores that were leaps and bounds above Mancini's, a 4.5, a 4.0, a 3.5, and a 4.0, respectively. Here, Mancini has produced legally competent evidence that his work performance exceeded that of these candidates. And once discrimination comes into play, the employer must speak up and explain itself. As such, due to Defendants' silence, the Court

should rule as a finding of fact that Mancini was more qualified for the Lieutenant's position than candidates Gregory Sion, Andrew Scanlon, Steven Courville, and Richard Fernandes.

## CONCLUSION

For the reasons previously stated, Plaintiff Mark Mancini respectfully requests this Honorable Court grant his Motion for Partial Summary Judgment Against the City of Providence on the Issue of Liability on Counts I, II, III, and IV of the Complaint.

>
> MARK MANCINI
> By His Attorney,
>
> /s/Mark P. Gagliardi
> Mark P. Gagliardi (#6819)
> LAW OFFICE OF MARK P. GAGLIARDI
> 120 Wayland Avenue, Suite 7
> Providence, RI 02906
> (401) 277-2030
> (401) 277-2021 (fax)
> mark@markgagliardilaw.net

Dated: June 16, 2017

## CERTIFICATION

I hereby certify that on this 16th day of June, 2017, I filed electronically this document with the Clerk of the U.S. District Court for the District of Rhode Island and, therefore, all counsel-of-record has received notice electronically.

> /s/Mark P. Gagliardi